UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEBBIE HALL, )<br>)<br>        Plaintiff, )<br>  vs. )<br>)<br>CAROL SCHUMACHER, KAILEE )<br>DIAZ, KELLY NEWMAN, DIANE )<br>CAMARDELLA, SAMANTHA MILLER, )<br>JOHN CROCKER, STEPHANIE )<br>CALACAL, IBEW PLUS CREDIT )<br>UNION, et al., )<br>)<br>        Defendants. ) | Case No.: 2:10-cv-01353-GMN-PAL<br><br>**ORDER** |

This is an action filed by pro se Plaintiff Debbie Hall, against Defendants Carol Schumacher, Kailee Diaz, Kelly Newman, Diane Camardella, Samantha Miller, John Crocker, Stephanie Calacal, and IBEW Plus Credit Union, et al. (collectively, "Defendants"). Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 39).

**I. BACKGROUND**

**A. Procedural History**

On June 21, 2010, Plaintiff filed a Complaint in state court alleging four causes of action: (1) Unfair Hiring and Promotions; (2) Racial & Age Discrimination & Harassment; (3) Retaliation; and (4) Mitigating Facts. (Compl., Ex. A to Petition for Removal, ECF No. 1.) Although not specifically referenced in the Complaint, all parties appear to agree that Plaintiff's Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and of the Age Discrimination in Employment Act ("ADEA"), 29 U.S. C. § 621, et seq.

On March 21, 2011, the Court granted Defendants' Motion to Dismiss (ECF No. 5), dismissing Plaintiff's claims against individual defendants, and dismissing Plaintiff's ADEA claims. (ECF No. 32.) The Court also granted Plaintiff leave to file an amended complaint within fourteen days of entry of the Order. (ECF No. 32.) One week after this deadline, on April 7, 2011, Plaintiff filed an untimely Amended Complaint (ECF No. 33), and on April 12, 2011, Plaintiff filed an Addendum to Exhibit B of her Amended Complaint (ECF No. 34). Defendants then filed the instant Motion for Summary Judgment. (ECF No. 39.)

On June 8, 2011, the Court filed a Minute Order that notifying parties of Federal Rule of Civil Procedure 56 and to Local Rules 7-2 and 56-1. (ECF No. 43.) Together, these rules provide, in part, that an opposing party's failure to file points and authorities in response to a motion for summary judgment within twenty-one days after service of the motion shall constitute a consent to the granting of the motion. (ECF No. 43.) On June 28, 2011, Plaintiff filed a Motion for Enlargement of Time or, Alternatively, Motion to Stay (ECF No. 46), requesting an additional one hundred and twenty days to file her opposition. The Court granted Plaintiff's motion in part and denied it in part, ordering Plaintiff to file her opposition to Defendants' Motion for Summary Judgment by July 12, 2011. (ECF No. 48.) On July 15, 2011, Plaintiff untimely filed a two-page document styled as "Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint and Countermotion to Hold Defendant in Contempt of Court for Failing to Provide Discovery/Evidence, and Related Relief." (ECF No. 51.) This document does not address the substance of Defendants' Motion for Summary Judgment, and the second page is a notarized letter from a co-worker. (ECF No. 51.) Even if the Court were to construe these documents as a response to Defendants' arguments in the instant Motion for Summary Judgment (ECF No. 39), the opposition would still be untimely and

unaccompanied by any points and authorities in support. Accordingly, in considering Defendants' Motion for Summary Judgment (ECF No. 39), the Court will not rely on Plaintiff's opposition (ECF No. 51) nor on Defendants' Reply (ECF No. 55).

**B. Summary of Undisputed Facts**

The undisputed evidence presented to the Court shows that Plaintiff's work history as an IBEW Plus Credit Union employee is as follows.

Plaintiff, who identifies herself as a black woman, was hired as a Call Center Representative in August 2005, when she was forty-three years old. In June 2006, Plaintiff applied for a job opening as a CUDL Utility Clerk and was not selected. In September 2006, Plaintiff obtained a lateral position change from Call Center Representative to File Room Clerk. In June 2007, a job opening for a CUDL Utility Clerk position was posted, but Plaintiff did not re-apply for this position subsequent to the posting. Plaintiff had been unofficially filling in for the position of ATM Runner, and in July 2007, Plaintiff was selected for the position under the title of ATM Processor after she responded to a job posting for the position. In July 2008, a job opening for a position in Collections was posted, to which Plaintiff applied and was interviewed but was not selected.

On September 2, 2008, Plaintiff was disciplined pursuant to Defendant IBEW Plus Credit Union's "Loss Standards Policy" for leaving $120,000.00 in cash unattended while she and a co-worker left the building on three dates in August 2008. These three incidents were documented on videotape. As punishment for the infraction, which was categorized as a first occurrence cash and security violation, Plaintiff was given a "final written warning" and was prohibited from submitting a job posting for six months. The "final written warning" was later downgraded to a "written warning."

On September 3, 2008, Plaintiff filed a Union Grievance alleging violations of the Collective Bargaining Agreement by Defendant IBEW Plus Credit Union.  Five days later Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Complaint for retaliation, harassment and failure to promote.  On October 29, 2009, Plaintiff initiated a NLRB case against Defendant IBEW Plus Credit Union, and she initiated a second NLRB case on December 5, 2008.  On December 24, 2008, Plaintiff received a letter from the EEOC dismissing the claims alleged in her complaint.  On January 9, 2009, Plaintiff initiated a third and fourth NLRB case.

Plaintiff was terminated on January 22, 2009, based on her personal use of a company-issued cell phone in violation of the Defendant IBEW Plus Credit Union's Electronic Communications Policy, to which she admitted.

On January 26, 2009, Plaintiff filed a second Union Grievance in response to her termination.  Also in response to her termination, on January 27, 2009, Plaintiff initiated a fifth NLRB case.

Plaintiff and Defendant IBEW Plus Credit Union settled all pending union grievances and NLRB complaints on March 3, 2010.

On March 5, 2009, after her termination and before the settlement of the union grievances and NLRB complaints, Plaintiff had filed a charge of discrimination with the Nevada Equal Rights Commission and a second EEOC charge.  On April 27, 2010, after the settlement, the EEOC issued to Plaintiff a "right to sue" letter.  Plaintiff commenced the instant litigation in state court on July 21, 2010.

**B. Plaintiff's Allegations**

In Count I of her Amended Complaint, Plaintiff appears to generally allege failure to promote and failure to hire due to age discrimination and race discrimination, and also to nepotism.  Plaintiff refers to "job bids" she submitted in June 2006, July 2008, and

July 2009. (*See* Pl.'s Am. Compl., 2:¶5.)  However, Plaintiff does not give further details as to these positions, and it is unclear from the Complaint whether she was rejected for each of these.

In Count II she alleges that she was "denied the job promotions for Collector I . . . based on her being a black woman and outspoken during the time of July 23, 2008 through January 22, 2009." (Pl.'s Am. Compl., 3:¶15.)  In the same count, she alleges that "less competent Caucasians" would be hired "to fill positions" and that she and another black woman employee, Christy Henson, would be required "to do the work without compensation for the job that 'whites' would get hired and paid to do." (Pl.'s Am. Compl., 4:¶16.)  Plaintiff alleges that if she complained about her work assignment Defendants "would give [her] outlandish additional job assignments to complete before consideration of a promotion or being allowed to go to lunch on time during the time period of July 23, 2008 through January 22, 2009." (Pl.'s Am. Compl., 4:¶17.)  Plaintiff alleges that Defendants "ordered that [she] be audited more frequently than Caucasian employees were audited in their job performances" and that Defendants "followed [her] and her co-worker Christy Henson (a black female) on a route almost tailgating them to harass [her]." (Pl.'s Am. Compl., 4:¶¶18-19.)  Finally, Plaintiff alleges that Defendants "caused to be paid thousands of dollars to Defendants Calacal husband to paint a racist drawing in the office of IBEW [Plus Credit Union]." (Pl.'s Am. Compl., 4:¶20.)

In Count III Plaintiff alleges that she "complained of being given a written warning on September 8, 2008 by Defendants Miller, Schumacher and Newman to the Union Representative Robert Herrera" and that she "filed her first EEOC complaint on September 9, 2008 alleging discrimination, retaliation and harassment." (Pl.'s Am. Compl., 5:¶¶25-26.)  She alleges "that immediately thereafter adverse acts were taken against [her] by [Defendants], e.g., separating two (2) black females Christy Henson and

[Plaintiff] from working together, forcing [Plaintiff] to complete menial and humiliating tasks in the file room and demeaning [Plaintiff] in front of co-worker[s]." (Pl.'s Am. Compl., 5:¶27.)  Finally, Plaintiff alleges that she "was allegedly terminated for utilizing a company cell phone to make personal calls, when this was a pretextual reason as a basis for termination was retaliation for filing the EEOC complaint." (Pl.'s Am. Compl., 5:¶28.)  Plaintiff adds that she "had complained to Mr. Herrera, Assistant Business Manager @ Local #396 that Defendant Schumacher was caught red handed stealing money and [Plaintiff] had to be gotten rid of because she was interfering with the status quo." (Pl.'s Am. Compl., 6:¶29.)

Count IV of Plaintiff's Amended Complaint appears to solely describe the damages she alleges she has suffered.  However, she does state that she "was made to feel she wasn't good enough to be promoted in IBEW [Plus Credit Union] by Defendants[] because of her age and because she was black and couldn't make it through the glass ceiling." (Pl.'s Am. Compl., 6:¶36.)

Although not presented as such, Plaintiff's Amended Complaint appears to allege ADEA and Title VII violations for Defendants' failure to hire or promote her to the July 2008 Collections position and retaliation in relation to her termination.  Plaintiff does not specifically allege that the person hired for that Collections position was younger than her or less qualified.  Plaintiff also fails to allege when Defendants became aware of her employment complaints, or whether this occurred before the alleged retaliatory acts.  Because Defendants address a possible allegation of hostile work environment in their Motion for Summary Judgment, the Court does so as well.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. DISCUSSION**

At the outset, the Court notes that Plaintiff's Amended Complaint and Opposition to Defendants' Motion for Summary Judgment warrant dismissal for untimeliness. However, the Court also finds that dismissal is appropriate on the merits, as well. Accordingly, and as discussed below, the Court will grant Defendants' Motion for Summary Judgment and dismiss all claims.

### A. Claims Against Individual Defendants

As discussed in the Court's March 21, 2011, Order granting Defendants' Motion to Dismiss, neither Title VII nor the ADEA impose liability on employees in their individual capacities. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). Claims arising under 42 U.S.C. § 1983 are generally not applicable to private individuals and can only lie against a private party "where there is significant state involvement in the action." *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (internal citation and quotation marks omitted). In her Amended Complaint, Plaintiff has not alleged any facts supporting liability of the individual defendants under section 1983. Accordingly, Plaintiff's claims fail to allege any facts or to establish any genuine dispute of material facts supporting liability against the individual defendants, and those claims will be dismissed.

### B. Title VII and ADEA Claims Against Defendant IBEW Plus Credit Union

The remaining claims appearing to allege Title VII and ADEA violations by Defendant IBEW Plus Credit Union also fail.

Under Title VII, "it is unlawful . . . for an employer . . . to discriminate against any individual" because of the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against individuals with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a). To avoid summary judgment, Plaintiff must either present direct evidence of discrimination or establish a prima facie case of a Title VII or ADEA violation. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

"Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statement or actions by the employer." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1038 (9th Cir. 2005) (internal quotation marks omitted). Here, Plaintiff does not argue or appear to allege that direct evidence is of discrimination is present.

Where a plaintiff relies on indirect evidence of discrimination, courts in this circuit apply a three-step burden-shifting evidentiary framework when analyzing motions for summary judgment on ADEA and Title VII claims, based on the approach articulated by the Supreme Court in the Title VII context in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973). *See Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) (applying the Title VII framework of *McDonnell Douglas* and holding that "nothing in [*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)] overruled our cases utilizing this framework to decide summary judgment motions in ADEA cases"). This framework requires that (1) a plaintiff must first establish a prima facie case of discrimination; (2) if the plaintiff meets that burden, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; (3) if the employer meets this burden, the burden then shifts back to the plaintiff to raise a triable issue of material fact showing that the employer's nondiscriminatory reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-04; *Shelley*, 666 F.3d at 607. "[L]iability [in a disparate treatment case] depends on whether the protected trait actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). "[T]he employee's protected trait [must have] actually played a role in that process and had a determinative influence on the outcome." *Id.*

### 1. Failure to Promote

As discussed in the Court's March 21, 2011, Order, an ADEA plaintiff can establish a prima facie case by alleging that she was: (1) at least forty years old; (2)

performing her job satisfactorily; (3) discharged or passed over for promotion, and (4) either (a) passed over in favor of or replaced by substantially younger employees with equal or inferior qualifications, or (b) discharged or passed over under circumstances otherwise giving rise to an inference of age discrimination. *Washington v. Certainteed Gypsum, Inc.*, No. 2:10-cv-00204-GMN-LRL, 2010 WL 3613887, at *5 (D. Nev. Sept. 7, 2010); *see also Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). In the failure to promote context, "a plaintiff must show that (1) she belongs to a protected class; (2) she applied for and was qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff." *Dominguez-Curry*, 424 F.3d at 1037.)

      In the first count of her Amended Complaint, Plaintiff alleges that Defendant IBEW Plus Credit Union knew that she was a forty-seven year old black woman when she was denied job promotions that were given to younger white and Hispanic men and women. (Pl.'s Am. Compl., 3:¶8.)  Plaintiff alleges that her "job performance was satisfactorily done during the times in question" and attaches two performance reviews from October and December 2008 as evidence. (*Id*. at 3:¶9, Ex. A.)

      Plaintiff's claim of discrimination in relation to the Collections position fails at the prima facie level in that she does not allege that her employer filled the position with an employee not of plaintiff's class, or younger than her.  In fact, the undisputed evidence shows that the person hired, Nicholas Jacovino, was older than her and had over seventeen years of experience in the area of collections. (*See* Pl.'s Dep. Tr. Excerpts, Ex. A to Bradford Decl., ECF No. 41-2.)  Even if the Court were to construe her allegation that "Defendant IBEW [Plus Credit Union] would hire less competent Caucasians to fill

positions" as such an allegation, Plaintiff's claim still fails in that she does not raise a triable issue of material fact showing that the nondiscriminatory reason that Jacovino was hired over her – that Plaintiff did not possess the requisite experience in collections – was pretextual. From her deposition, it is unclear whether Plaintiff even argues Defendant IBEW Plus Credit Union's decision to hire Jacovino was pretext for age or race discrimination, since she does not claim that she presented similar work experience in her application and interview and she stated that she didn't "know if it was because of my race or my age." (Pl.'s Dep. Tr. Excerpts, 114:7-20, Ex. A to Bradford Decl., ECF No. 41-2.) Because the Court finds that no reasonable jury could find in Plaintiff's favor as to whether Jacovino was older than her or whether he was equally or less qualified, Plaintiff's claims on this issue will be dismissed.

Because Plaintiff's references to other discriminatory employment actions by Defendants with regard to hiring and promotions are vague and unsupported by any further briefing or evidence, the Court finds that to the extent that Plaintiff makes these claims, they may also be dismissed.

### *2. Retaliation*

Title VII's ant retaliation provision makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (quoting 42 U.S.C. § 2000e-3(a)). "To establish a prima facie case for a retaliation claim under Title VII, [a plaintiff] must show: (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal link between the two." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003).

Plaintiff alleges that she suffered retaliation for her complaints after the September 2008 disciplinary action.  However, a reasonable jury could not infer any adverse employment actions due to Plaintiff's complaints, since the evidence shows that the first that Defendant IBEW Plus Credit Union knew of Plaintiff's complaints with the NERC or the EEOC was on March 9, 2009, upon the filing her last charge of discrimination with the EEOC.  Plaintiff makes no allegation and presents no evidence to show that her complaints were known to Defendants before her January 2009 termination.  Accordingly, the Court will dismiss Plaintiff's retaliation claims.

### *3. Hostile Work Environment*

In her Amended Complaint, Plaintiff alleges multiple discriminatory actions that do not fall clearly into the categories of retaliation, failure to promote or failure to hire. Defendants address these allegations as claims of hostile work environment.  The phrase "terms, conditions, or privileges of employment" of 42 U.S.C. § 2000e-2(a)(1) "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminately hostile or abusive environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal citation and quotation marks omitted).  Title VII is therefore violated where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (internal quotation marks omitted).

As Defendants point out, Plaintiff's only allegations that she was subjected to harassment *based on her age or race* relate to the allegedly racist mural and, as mentioned in her deposition, her separation from Christy Henson purportedly because fellow employees were getting the two black women confused.  The undisputed evidence shows that the mural was incomplete at the time of Plaintiff's termination, such that the

faces of those depicted in the mural were unpainted and that the separation was close enough that the two employees could talk to each other through open doors. Even construing Plaintiff's allegations in her favor, the Court does not find that a reasonable jury could conclude that Defendants violated Title VII by requiring Plaintiff to work in a workplace permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. Accordingly, these claims, to the extent that they are alleged, will also be dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk shall enter judgment accordingly.

DATED this __4__ day of April, 2012.

_____
Gloria M. Navarro
United States District Judge